UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.: 2:16-cv-694-FtM-38UAM

JAMES DARYL WEST,

    Plaintiff,

v.

JULIE L. JONES,
Secretary of the Florida Department of
Corrections, et al.

    Defendants.
_____/

## DEFENDANT'S, WEXFORD HEALTH SOURCES, INC. MOTION TO DISMISS THE AMENDED COMPLAINT [DE 21]

COMES NOW, Defendant, WEXFORD HEALTH SOURCES, INC. by and through the undersigned counsel, pursuant to Fed.R.Civ.P. 12(b)(6) and files this its Motion to Dismiss the Amended Complaint [DE 21] and states the following in support thereof:

## MOTION

1. The allegations in Plaintiff's Amended Complaint fail to state a claim upon which relief can be granted, and therefore the Complaint should be dismissed.

## MEMORANDUM OF LAW

### I.  INTRODUCTION

Plaintiff, James Darryl West ("Plaintiff") has filed this lawsuit against Defendant, Wexford Health Sources, Inc. ("Wexford") generally alleging deliberate indifference as to his healthcare in Charlotte Correctional Institution. Although Wexford is listed as a defendant, the allegations against Wexford are scant at best. Plaintiff alleges "the custom's [sic] and policie's

[sic] of the FDOC and Wexford has caused the Plaintiff to suffer from chronic plain and physical injuries that have received very little care." [DE 21] ¶ 6. "The Defendant, because of contracts, customs and policies restricts all non-emergency medical care, specialist's consultations, diagnostic testing, orthopedic appliances, and medications." Id. at ¶ 9.

**II.   ARGUMENT: THE ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST WEXFORD.**

**A.   THAT WEXFORD HAD AN UNCONSTITUTIONAL POLICY OR CUSTOM WHICH VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS.**

Because Wexford is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Buckner v. Toro, 116 F.3d 450 (11th Cir. 1997) (extending the application of Monell to private corporations performing traditional public functions); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation] is actually responsible"), abrogated in part by Bell Atl. Corp., 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986).

The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000); see also Monell, 436 U.S. 658. That is, "liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986).

The Brown Court also narrowed the test for causation when it stated:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404 (emphasis in original). A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for the heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a

> city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

Gold v. City of Miami, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); see also Brown, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation. Estelle, 429 U.S. at 106; Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004). There, the plaintiff brought section 1983 claims against a Georgia county, claiming policies constituted and resulted in deliberate indifference to his medical needs. Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In McDowell, an inmate was seen and treated for back pain at a local hospital on June 5, 1997. At 9:30 the next night, he reported an inability to urinate and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to the hospital. But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first. The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy. Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed

emergent; and he was taken to the hospital by ambulance. A spinal abscess was diagnosed, and surgery was performed. After surgery, McDowell was an incomplete paraplegic. See McDowell at 1286-87.

McDowell arrived at the 11th Circuit after the district court granted summary judgment to the county. The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation. Id. at 1289 (citing Monell, 436 U.S. at 692).

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " McDowell, 392 F.3d at 1290 (quoting Bd. of County Com'rs v. Brown, 520 U.S. 397, 403-04 (1997)). That identification "prevents the imposition of liability based upon an isolated incident." Id. "Rather, the incident must result from a demonstrated practice." *Id*. The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." Id.

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." Id. Therefore, the court determined this occurrence was an "isolated incident" rather than a "persistent" or "widespread" policy. Id. at 1290-91.

Next, the McDowell court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or

obvious consequences.' " Id. at 1291 (citing Davis ex rel. Doe v. Dekalb County Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000)). The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant inability to transport." Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail. Id.

Relying on the Supreme Court's decision in Brown, the McDowell court found that in a case "where the plaintiff claims that a municipality's facially valid actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.' " Id. (quoting Brown, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." Brown, 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original). For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " McDowell, 392 F.3d at 1291 (quoting Brown, 520 U.S. at 407). A "showing of simple or even heightened negligence is not enough." Id. (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit. The court determined there was no evidence the governing body knew of any potential medical concerns caused by its decision, and found the policy to be sound. Id. (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation"). McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." Id. at 1292. Thus, the court found the alleged

constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail. Id.

The court then considered causation. The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury. Id. The court recognized the Supreme Court's caveat in Brown that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Id. (quoting Brown, 520 U.S. at 410). To "test the link" between the injury and the County's conduct, the McDowell court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious consequence' of that decision." Id. (stating that "[w]hile it may be true that the Board's budget decision would make a violation of his constitutional rights 'more likely,'" that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . . produced a specific constitutional allegation)(quoting Brown at 411). Again, relying on *Brown*, the court went on to state that "liability must be premised on a finding that "*this*" budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered." Id. at 1292 (quoting Brown at 411) (emphasis in original). The McDowell court stated:

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing. Additionally, McDowell did not demonstrate that the County was the moving force behind his injury, given that the Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable. Finally, the record indicates that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before. To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.

Id. at 1292-93.

Plaintiff has two methods to establish Wexford's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Wexford. In either method, Plaintiff must prove more than an "isolated incident" but rather a "persistent" or "widespread" policy. Plaintiff has failed to even allege either. Further, Plaintiff must also allege the policy was created with knowledge that his injury was a highly probable consequence of the policy's creation. There is no allegation of Plaintiff suffered an injury (from Wexford alleged customs or policies) let alone that the policy was created with the knowledge his injury was a highly probable consequence of the policy's creation. Finally, (assuming solely for the sake of this argument) Plaintiff demonstrated he suffered an injury, there is no allegation that the policy was the "driving force" which lead to that injury. In sum, there is not a sufficient claim that Wexford had an unconstitutional policy or custom which violated Plaintiff's constitutional rights. Accordingly, the Amended Complaint against Wexford should be dismissed.

      **B.**     **A DIFFERENCE OF OPINION WITH MEDICAL STAFF ABOUT THE PROPER COURSE OF TREATMENT DOES NOT SUPPORT A CLAIM FOR DELIBERATE INDIFFERENCE.**

A difference of opinion with medical staff about the proper course of treatment does not support a claim for deliberate indifference. Price v. Cameron, No. 2:10-CV-578-FTM-99, 2012 WL 3536795, at *6 (M.D. Fla. Aug. 14, 2012); (citing Palazon v. Sec'y Dep't of Corr., 361 F. App'x 88, 89 (11th Cir.2010) (quoting Adams v. Poaq, 61 F.3d 1537, 1545 (11th Cir.1995)(whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not

an appropriate basis for grounding" constitutional liability); Harris, 941 F.2d at 1505 (a difference of medical opinion between the prison's medical staff and the inmate about the latter's course of treatment will not support a claim of cruel and unusual punishment).

Plaintiff characterizes his radiologist reports (attached to his Amended Complaint as Exhibit "G" [DE 22-7]) as showing "insurmountable damage and further decline to the right knee and right foot." [DE 21] at ¶55. To provide some perspective, Wexford argues the following:  The radiograph of the right knee shows, "There is narrowing and osteophytosis of the medial compartment and patellofemoral joint."  [DE 22-7] at p. 2.  Said otherwise, he had bone spurs around his knee. "Bone spurs are bony projections that develop along bone edges. . . . Most bone spurs cause no symptoms and can go undetected for years. They might not require treatment. If treatment is needed, it depends on where the spurs are located and how they affect your health. . . . . Most bone spurs cause no signs or symptoms. You might not realize you have bone spurs until an X-ray for another condition reveals the growths." https://www.mayoclinic.org/diseases-conditions/bone-spurs/symptoms-causes/syc-20370212.  Furthermore, the radiograph of his right foot indicated "Marked degenerative disease of the first MTP joint.  Tiny calcaneal spur." [DE 22-7] at p. 3.  Said otherwise, Plaintiff had arthritis in his big toe joint and a tiny heel spur.

From Plaintiff's own Amended Complaint, it is clear that his claim against Wexford is based upon a difference of opinion as to his medical treatment.  Plaintiff believed he should have been provided an MRI, additional/ different medications, specialist consultations, and "orthopedic appliances" for his bone spurs around his knee, arthritis in his big toe, and his tiny heel spur.

The Court must not lose sight of the law that minor, although painful, conditions are not considered serious medical needs for Eighth Amendment purposes. Davis v. Jones, 926 F.2d 971, 972 (7th Cir. 1991). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society." See Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 1001 (1992) citing Rhodes, 452 U.S. 337; see also Anciza v. Morales, 2011 WL 2174135, 5 (N.D. Fla. 2011) (no serious medical need found; Plaintiff had chronic arthritis, which was appropriately treated with anti-inflammatory medications);; see also Smith v. Debruyn, 91 F.3d 146 (7th Cir. 1996) (although arthritis may be very painful, arthritis was not a serious medical need under Eighth Amendment); see also Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (inmate had full range of motion in his shoulder, despite continuing pain from 3-year old injury).

Plaintiff's difference of opinion on how to treat the bone spurs around his knee, arthritis in his big toe, and his tiny heel spur does not rise to the level of deliberate indifference and therefore the Amended Complaint should be dismissed.

### III. Conclusion and Prayer for Relief

For the foregoing reasons, the Amended Complaint should be dismissed.

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was E-filed with the Clerk of Court through the CM/ECF system on **February 21, 2019**, and e-served by the Clerk of the Court to: Stanley W. Plappert, Esquire, The Florida Legal Advocacy Group, P.A., **Attorney for Plaintiff, Inmate, James D. West, (DC#651314)**, 1024 E. Silver Springs Boulevard, Ocala, FL 34470; Telephone: (352) 732-8030; Facsimile; (888) 399-3129; SWP@TheFloridaLegalAdvocacyGroup.com; and to Caroline Johnson Levine, Esquire,

Office of the Attorney General, General Civil – Tampa, **Attorney for Defendant, Julie L. Jones, Secretary of the Florida Department of Corrections**, 501 E. Kennedy Blvd., Suite 1100, Tampa, FL 33601, Telephone: (813) 577-4571; caroline.johnsonlevine@myfloridalegal.com; deborah.mason@myfloridalegal.com; tyrell.daniel@myfloridalegal.com.

            CHIMPOULIS & HUNTER P.A.
            Attorneys for Defs/ Karen Blankenship;  B.
            Larosa, RN; Howard Wetterer, MD; Ronald
            Hemphill, MD; Wexford Health Sources, Inc.
            150 South Pine Island Road | Suite 510
            Plantation, FL  33324
            Phone: (954) 463-0033 / FAX:  (954) 463-9562

            /s/ Alexander Dombrowsky
BY: ALEXANDER DOMBROWSKY, ESQ.
    Florida Bar No.:  186260
    Email – adombrowsky@chl-law.com
    M. KATHERINE HUNTER, ESQUIRE
    Florida Bar No.:  981877
    Email – khunter@chl-law.com