UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.: 2:16-CV-694-FTM-38CM

JAMES DARYL WEST,

    Plaintiff,

vs.

JULIE L. JONES,
Secretary of the Florida Department of
Corrections;

    Defendants.
_____/

**WEXFORD DEFENDANTS'[1]**
**OMNIBUS MOTION TO DISMISS SECOND AMENDED COMPLAINT [DE 21]**

COMES NOW, Defendants, WEXFORD HEALTH SOURCES, INC.; ROBERT HEMPHILL, MD; HOWARD WETTERER, MD; KAREN BLANKENSHIP, ARNP; and BONNIE LAROSA, RN (collectively the "Wexford Defendants") by and through the undersigned counsel, pursuant to Fed.R.Civ.P. 12(b)(6) and files this Motion to Dismiss the Second Amended Complaint [DE 168] pursuant to Fed.R.Civ.P. 12(b)(6) and states the following in support thereof:

**MOTION**

1. The allegations in Plaintiff's Amended Complaint do not state viable claims, and therefore the Complaint should be dismissed.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

---
[1] Please note, Mr. West has not served Dr. Carmelo Berrios.

Plaintiff, James Darryl West ("Mr. West") is an inmate in the Florida Department of Corrections serving a 30 year sentence for robbery. Mr. West, through his counsel, has filed this iteration of his lawsuit against the Wexford Defendants purporting to allege causes of action for Violations of the Plaintiff's Civil Rights Under 42 U.S.C. § 1983 and the Fourteenth and Eighth Amendment to the United States Constitution (Count I), and Negligence (Count II) for their deliberate indifference to his serious medical need.

As argued in more detail below, the Court must dismiss the Second Amended Complaint because Mr. West has plead several incorrect and inapplicable legal standards which are fatal flaws to the pleading; yet, even if he had used the correct legal standards, the facts as alleged do not state a cause of action. Further, Mr. West has plead a claim under medical negligence without compliance with statutory presuit requirements and past the statute of limitations.

## II. ARGUMENT

### A. MR. WEST FAILS TO STATE A CAUSE OF ACTION FOR DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED.

#### 1. THE FOURTEENTH AMENDMENT IS INAPPLICABLE IN THIS CASE.

Preliminarily, it should be noted that in Count I of Mr. West's Second Amended Complaint, he cites a violation of the 14th Amendment. Upon entering the Florida Department of Corrections, Mr. West was no longer a pretrial detainee for whom protection under the 14th Amendment applied. Said otherwise, 14th Amendment deliberate indifference claims govern those actions by pretrial detainees; the 8th Amendment governs those by prisoners. Although the caselaw analysis is identical, more appropriately, Mr. West should be suing under the 8th Amendment rather than the 14th Amendment. See generally Goebert v.

Lee County, 510 F.3d 1312. Accordingly, any claim purporting to be a violation of the 14th Amendment must be dismissed.

### 2. MR. WEST HAS PLEAD AN INCORRECT AND INAPPLICABLE LEGAL STANDARD: DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED VS. DELIBERATE INDIFFERENCE TO CONDITIONS OF CONFINEMENT.

Throughout the Second Amended Complaint, Mr. West has used an incorrect and inapplicable legal standard for the elements of his purported cause of action for deliberate indifference to a serious medical need. He alleges throughout that "defendant was deliberately indifferent to a substantial risk of serious harm to the Plaintiff, due to a serious medical need, and was subjectively reckless in [his/ her] actions when [he/ she] deprived the Plaintiff of the *minimal civilized measures of life's necessities. . . .*" [DE 168] at ¶¶ 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, and 141 (emphasis added). These are not the elements of deliberate indifference to a serious medical need (as argued below in more detail). These elements are for an 8th Amendment violation for deliberate indifference to conditions of confinement. See Roberts v. Pichardo, Case No. 11-cv13318, 2012 WL 12109911 at * 2 (11th Cir., June 1, 2012) citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) and Hudson v. McMillan, 503 U.S. 1 (1992).

> Conditions that deprive inmates of the minimal civilized measures of life's necessities are violative of the Eighth Amendment. Hudson, 503 U.S.1, 9. The Supreme Court developed a two-part analysis to analyze condition-of-confinement claims. First, under the objective component, the condition complained of must be sufficiently serious or extreme, such that it poses an unreasonable risk of serious damage to [the plaintiff's] future health or safety. Second, a plaintiff must show that the defendants acted with deliberate indifference. Roberts at*2 (internal quotes and citations omitted).

Conditions of confinement cases address issues such as high temperature in prison cells during the summer months, profound isolation, lack of exercise, stench and filth, malfunctioning plumbing, uncontrolled mosquito and insect infestations, etc. See generally Hudson at 1291 (internal citations omitted).

In sum, throughout the entire Second Amended Complaint, Mr. West has used the wrong elements for a deliberate indifference to serious medical need cause of action. Accordingly, the entirety of Count I must be dismissed.

### 3. MR. WEST HAS PLEAD ANOTHER INCORRECT AND INAPPLICABLE LEGAL STANDARD: DEPRIVATION OF DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AND THE EIGHTH AMENDMENT.

Throughout the Second Amended Complaint, Mr. West has alleged that the Wexford Defendants

> deprived Plaintiff of **due process of law in violation of the Fourteenth Amendment and the Eighth Amendment** when the defendant was deliberately indifferent to a substantial risk of harm to the Plaintiff, due to a serious medical need, and was subjectively reckless in [his/ her] actions and responsibilities when [he/ she] deprived the Plaintiff of the minimal civilized measure of life's necessities when [he/ she] was aware of the Plaintiff's serious medical need. . . .

[DE 168] ¶ 130, 134, 135, 136, 137, 138 (emphasis added).

We've established that the Fourteenth Amendment is not applicable to Mr. West, a non-pretrial detainee. We've established that Mr. West is using the wrong legal elements for his stated claim of deliberate indifference to a serious medical need (as opposed to conditions-of-confinement). We are now forced to point out that the Eighth Amendment to the U.S. Constitution does not contain a due process clause.[2] "Excessive bail shall not be

---

[2] Granted, there is a very small sliver of Eighth Amendment jurisprudence wherein an excessive fine is considered a deprivation of property without due process of law. Waters-Pierce Oil Co. v. Texas, 212 U.S. 86 (1909). That is not the case here.

required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Amendment VIII, United States Constitution. Accordingly, the entirety of Count I must be dismissed.

### 4. EVEN IF MR. WEST HAD USED THE RIGHT ELEMENTS, THE FACTS AS ALLEGED DO NOT STATE A CAUSE OF ACTION FOR DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED.

Assuming for the purposes of this argument that Mr. West had used the right elements for the offense he's suing for, the facts as alleged do not support deliberate indifference to a serious medical need. "'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain,' which is prohibited by the Eighth Amendment." Harris v. Leder, 519 Fed.Appx. 590, 595 (11th Cir. 2013) (citing Estelle v. Gamble, 429 U.S. 97, 104, (1976) (internal quotation marks omitted)). "To establish deliberate indifference to a serious medical need, an inmate must show: (1) an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm (the objective component); and (2) that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law (the subjective component)." Harris, 519 Fed.Appx. at 595-96 (internal quotations and citations omitted). "Disagreement over a matter of medical judgment does not constitute cruel and unusual punishment." Id. at 596. "[T]he question of whether governmental actors should have employed additional…forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Id. (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting Estelle, 429 U.S. at 107)).

Mr. West has failed to even allege that he had a serious medical need. Although the Second Amended Complaint is replete with allegations that Mr. West had a serious medical need, nowhere does the Second Amended Complaint allege what that serious medical need actually is. There are allegations that he had pain in his back, knee, and right foot—but absolutely no allegations, for example, that pain in the back, knee, and right foot amount to a serious medical need. This is an essential element to the pleading insofar as Mr. West must, at the very least, allege "an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm." Harris, 519 Fed.Appx. at 595-96. As the Court is well aware, "Minor, although painful, conditions are not considered serious medical needs for Eighth Amendment purposes. Davis v. Jones, 936 F.2d 971, 972 (7th Cir 1991). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" See Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 1001 (1992) citing Rhodes, 452 U.S. 337; see also Anciza v. Morales, 2011 WL 2174135, 5 (N.D. Fla. 2011); see also Smith v. Debruyn, 91 F.3d 146 (7th Cir. 1996); see also Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978).

Additionally, there must be a showing that the acts of the medical defendants were intentional or reckless. Duff v. Prison Health Services, 2011 WL 4542507 at *8 (M.D. Fla. 2011) (citing Farmer v. Brennan, 511 U.S. 825, 833-38 (1994); Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that the Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law)). "The deliberate indifference standard is a demanding one, and a showing of negligence is never enough, as the Supreme Court has stated that 'a complaint that a physician has been negligent in

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment…'" Duff, 2011 WL 4542507 at *8 (quoting Estelle, 429 U.S. at 104, 106). See also McElligott v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999) (holding that failure to diagnose an inmate's colon cancer did not constitute deliberate indifference, even though it could be deemed extremely negligent).

"In order to properly establish the subjective component of the deliberate indifference analysis, the plaintiff must show that: (1) the defendants subjectively knew that a substantial risk of harm existed, (2) they disregarded that substantial risk, and (3) their conduct in disregarding that risk was more deliberate than mere negligence." Williams v. Arnold, 207 Fed.Appx. 980, 984 (11th Cir. 2006). "To establish the subjective component of deliberate indifference, the plaintiff must essentially show that the defendant intended to punish the plaintiff by depriving the plaintiff of necessary medical care." Id. at 984. "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). See also Miller v. Correctional Medical Services, Inc., 2010 WL 3723998 (M.D. Ala. 2010) (dismissing plaintiff's § 1983 claims arising from inmate's death from sepsis due to defendants' failure to properly treat inmate's decubitus ulcers, or bed sores, on his body; plaintiff's allegations that defendants failed to properly diagnose and treat the inmate, misprescribed medication, failed to provide adequate or timely examinations, appropriate monitoring of medical conditions, appropriate plans of care, assessment of underlying medical conditions, and failed to follow internal policies and protocols for patient records, monitoring and treatment, may show gross negligence or medical malpractice, but did not rise to the level of deliberate indifference); Williams v. Arnold, 207 Fed.Appx. 980, 985 (11th Cir. 2006) (concluding that jail officials'

delays in obtaining inmate's prescription medications for inmate's serious medical condition did not constitute deliberate indifference to support § 1983 claim for Eighth Amendment violation); Deese v. City of Jacksonville, 2008 WL 5158289 at *12 (M.D. Fla. 2008) (concluding that defendants' treatment of inmate's sepsis, infected toe, and gangrene, which eventually led to amputation of leg, did not rise to level of deliberate indifference); Lee v. Alachua County, 2011 WL 2580162 (N.D. Fla. 2011) (dismissing inmate's § 1983 claim on grounds that alleged medical treatment of inmate's severe stomach virus did not rise to level of deliberate indifference; the defendants' failure to treat the inmate within the medical department and the nurse's recommendation that the inmate simply stay in bed and drink plenty of water until the virus ran its course did not constitute deliberate indifference—disputes in medical judgment do not rise to the level of deliberate indifference); Schneider v. Parker, 2011 WL 722759 at *4 (M.D. Fla. 2011) (dismissing inmate's § 1983 claim on grounds that alleged medical treatment of inmate's staph infection and delay in such treatment did not rise to level of deliberate indifference; inmate's claim essentially disagreed with course of treatment prescribed and thus, fails to state a viable claim of deliberate indifference to medical care); Kidd v. Maryweather, 2007 WL 2206847 at *6 (M.D. Ala. 2007) (concluding that treatment of inmate's spider bite and resultant staph infection and pneumonia and inmate's contention that he should have been placed in a medical observation unit and prescribed other antibiotics did not constitute deliberate indifference).

  With regard to the subjective analysis of the deliberate indifference claims, Mr. West's allegations, even if assumed to be true for the purposes of this motion, fail to satisfy the subjective component of deliberate indifference. There are no allegations that would

indicate that the Wexford Defendants' actions were intended to punish Mr. West or otherwise recklessly or intentionally hurt him. To the contrary, within Mr. West's own allegations, Dr. Hemphill, Dr. Wetterer, Nurse Blankenship, and Nurse LaRosa examined, diagnosed him, and even provided him with pain medication. "After incarceration, only the unnecessary and wanton infliction of pain… constitutes cruel and unusual punishment for been by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 citing Ingraham v. Wright, 430 U.S. 651, 670 (1977). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety." Id. at 319. "Accordingly, under [Supreme Court cases] Estelle and Farmer, deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248 (11 Cir. 1999).

Moreover, as to the requisite element of causation, Plaintiff has failed to allege that the Wexford Defendants' actions actually caused his injuries. "As with any tort claim, the prisoner must show the injury was caused by the defendant's wrongful conduct." See Clark v. Tucker, 2014 WL 68646 (M.D. Fla. Jan. 8, 2014) 13-CV-2642 citing Goebert v. Lee County, 510 F.3d 1312 (11th Cir. 2007). There is not even an allegation that his issues worsened through the Wexford Defendants' care of Mr. West.

> **B.  MR. WEST FAILED TO ALLEGE THAT WEXFORD HAD AN UNCONSTITUTIONAL POLICY OR CUSTOM WHICH VIOLATED HIS CONSTITUTIONAL RIGHTS.**

Because Wexford is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Buckner

v. Toro, 116 F.3d 450 (11th Cir. 1997) (extending the application of Monell to private corporations performing traditional public functions); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation] is actually responsible"), abrogated in part by Bell Atl. Corp., 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000); see also Monell, 436 U.S. 658. That is, "liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986).

The Brown Court also narrowed the test for causation when it stated:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404 (emphasis in original). A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for the heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

Gold v. City of Miami, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); see also Brown, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation. Estelle, 429 U.S. at 106; Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004). There, the plaintiff brought section 1983 claims against a

Georgia county, claiming policies constituted and resulted in deliberate indifference to his medical needs. Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In McDowell, an inmate was seen and treated for back pain at a local hospital on June 5, 1997. At 9:30 the next night, he reported an inability to urinate and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to the hospital. But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first. The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy. Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed emergent; and he was taken to the hospital by ambulance. A spinal abscess was diagnosed, and surgery was performed. After surgery, McDowell was an incomplete paraplegic. See McDowell at 1286-87.

McDowell arrived at the 11th Circuit after the district court granted summary judgment to the county. The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation. Id. at 1289 (citing Monell, 436 U.S. at 692).

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " McDowell, 392 F.3d at 1290 (quoting Bd. of County Com'rs v. Brown, 520

U.S. 397, 403-04 (1997)). That identification "prevents the imposition of liability based upon an isolated incident." Id. "Rather, the incident must result from a demonstrated practice." Id. The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." Id.

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." Id. Therefore, the court determined this occurrence was an "isolated incident" rather than a "persistent" or "widespread" policy. Id. at 1290-91.

Next, the McDowell court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences.' " Id. at 1291 (citing Davis ex rel. Doe v. Dekalb County Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000)). The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant inability to transport." Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail. Id.

Relying on the Supreme Court's decision in Brown, the McDowell court found that in a case "where the plaintiff claims that a municipality's facially valid actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.' "Id. (quoting Brown, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." Brown, 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original). For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken

with deliberate indifference as to its known or obvious consequences.' " McDowell, 392 F.3d at 1291 (quoting Brown, 520 U.S. at 407). A "showing of simple or even heightened negligence is not enough." Id. (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit. The court determined there was no evidence the governing body knew of any potential medical concerns caused by its decision, and found the policy to be sound. Id. (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation"). McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." Id. at 1292. Thus, the court found the alleged constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail. Id.

The court then considered causation. The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury. Id. The court recognized the Supreme Court's caveat in Brown that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Id. (quoting Brown, 520 U.S. at 410). To "test the link" between the injury and the County's conduct, the McDowell court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious consequence' of that decision." Id. (stating that "[w]hile it may be true that the Board's budget decision would make a violation of his constitutional rights 'more likely," that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . .

Page **14** of **19**

produced a specific constitutional allegation)(quoting Brown at 411). Again, relying on *Brown*, the court went on to state that "liability must be premised on a finding that "*this*" budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered." Id. at 1292 (quoting Brown at 411) (emphasis in original). The McDowell court stated:

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing. Additionally, McDowell did not demonstrate that the County was the moving force behind his injury, given that the Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable. Finally, the record indicates that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before. To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.

Id. at 1292-93.

Mr. West has two methods to establish Wexford's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Wexford. In either method, Mr. West must prove more than an "isolated incident" but rather a "persistent" or "widespread" policy. Mr. West has failed to even allege either. The word "policy" only appears once (in reference to Wexford) in the entire Second Amended Complaint. "Upon information and belief, Wexford had a policy of denying non-emergency care, including diagnostic testing, specialist consultations, pain medication, and surgery in order to save money." [DE 168] at ¶ 37. Further, Mr. West must also allege the policy was created with knowledge that his injury was a highly probable consequence of the policy's creation. There is no allegation that Mr. West suffered an injury (from Wexford's alleged customs or policies) let alone that the policy was created with the knowledge his injury was a highly probable consequence of

the policy's creation. Finally, (assuming solely for the sake of this argument) Mr. West demonstrated he suffered an injury, there is no allegation that the policy was the "driving force" which lead to that injury. In sum, there is not a sufficient claim that Wexford had an unconstitutional policy or custom which violated Mr. West's constitutional rights. Accordingly, Count I of the Second Amended Complaint against Wexford should be dismissed.

    **C.   A DIFFERENCE OF OPINION WITH MEDICAL STAFF ABOUT THE PROPER COURSE OF TREATMENT DOES NOT SUPPORT A CLAIM FOR DELIBERATE INDIFFERENCE.**

A difference of opinion with medical staff about the proper course of treatment does not support a claim for deliberate indifference. Price v. Cameron, No. 2:10-CV-578-FTM-99, 2012 WL 3536795, at *6 (M.D. Fla. Aug. 14, 2012); (citing Palazon v. Sec'y Dep't of Corr., 361 F. App'x 88, 89 (11th Cir.2010) (quoting Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir.1995)(whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); Harris, 941 F.2d at 1505 (a difference of medical opinion between the prison's medical staff and the inmate about the latter's course of treatment will not support a claim of cruel and unusual punishment).

From Mr. West's own allegations in the Second Amended Complaint, it is clear that his claim against the Wexford Defendants is based upon a difference of opinion as to his medical treatment. Mr. West believed he should have been given muscle relaxers for his pain and Dr. Hemphill only gave him ibuprofen. Mr. West believed that Dr. Hemphill should have ordered further diagnostics, referred him to a specialist. [DE 168] at ¶¶ 59-63. Dr. Hemphill's diagnosis was these were not indicated. Dr. Wetterer is alleged to have

examined Mr. West but declined his requests to have further diagnostic tests and more painkillers. Id. at ¶¶88-91. Nurse Bonnie LaRosa is also alleged to have examined Mr. West and even wrote him a "lay-in pass." Id. at ¶94, 95. Somehow Nurse LaRosa violated his right to be free from cruel and unusual punishment when the pass expired, Mr. West had to go back to work in the kitchen, and was severely injured by a bag of zucchini. Nurse Blankenship is also alleged to have examined Mr. West but refused to send him to a specialist or order any additional diagnostic testing. Id. at ¶¶ 79-81.

The four corners of Mr. West's Second Amended Complaint demonstrate that all of the Wexford Defendants' at Charlotte CI examined him (some ordering more x-rays, but not the one's Mr. West wanted). But, Mr. West wanted muscle relaxers and a referral to a specialist. This amounts to a difference of opinion in treatment, not deliberate indifference. Accordingly, Count I of the Second Amended Complaint must be dismissed.

### D.  MR. WEST FAILS TO STATE A CAUSE OF ACTION FOR NEGLIGENCE.

Plaintiff purports to sue the Wexford Defendants for negligence as seen in Count II. That negligence would necessarily be for medical negligence. See Fla. Stat. § 766.106(1)(a) (defining a "claim for medical negligence" as a claim "arising out of the rendering of, or the failure to render, medical care or services"); see also Corbo v. Garcia, 949 So. 2d 366, 370 (Fla. 2d DCA 2007) (holding that plaintiff could not show negligence without showing defendants were negligent in their medical treatment of plaintiff; therefore, plaintiff's claim was one for medical negligence and subject to the pre-suit requirements of Chapter 766). Mr. West "argues" in the Second Amended Complaint that "Wexford's negligence is not medical malpractice but basic negligence for violating a duty of care owed to the Plaintiff to properly train and supervise its employees, and of its employees to follow administrative procedures." [DE 168] at ¶ 155. In the

following two paragraphs of the Second Amended Complaint, Mr. West appears to move from simple negligence/ negligent training and supervision to an allegation of premises liability negligence. "Wexford and its employees, knew, or should have known that no individual, including the Plaintiff, had it within their own power to take the necessary measures to provide for his own safety on the premises of Charlotte Correctional Institute." Id. at 157.

Simply because Mr. West claims something is simple negligence (or negligent training and supervision or premises liability), does not make it so. Johnson v. Kats-Kagan, 2007 WL 221240 (N.D. Fla. Jan. 25, 2007) (recharacterizing "simple negligence" claim as "medical negligence" claim because the alleged wrongful acts were directly related to the improper application of medical services and the use of professional judgment or skill).

As the Court is well aware, Florida has a presuit notice and investigation framework, requiring strict adherence before a medical negligence action can be filed. See Fla. Stat. Chapter 766. Mr. West has not alleged compliance with those requirements. This subjects the proposed Second Amended Complaint to dismissal as a matter of law. See Kellar v. FDOC, Case No. 14-cv-84, 2015 WL 1296030 (N.D. Fla. March 22, 2015).

Further, the two year statute of limitations on medical negligence has passed. See, e.g., Johnson v. McNeil, 278 F. App'x 866, 872 & n.3 (11th Cir. 2008) (affirming dismissal with prejudice for failure to comply with Chapter 766 where the statute of limitations had already expired); R.W. v. Armor Correctional Health Servs., Inc., 830 F. Supp. 2d 1295, 1303 (M.D. Fla. 2011) ("Since the applicable two-year statute of limitations for medical malpractice claims has expired. Plaintiff has lost her right to cure her failure to file the pre-suit requirements."). Accordingly, Count II (Negligence) of the Second Amended Complaint must be dismissed.

### III. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Second Amended Complaint should be dismissed.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was E-filed with the Clerk of Court through the CM/ECF system on **April 24, 2019** and e-served by the Clerk of the Court to: Stanley W. Plappert, Esquire, The Florida Legal Advocacy Group, P.A., **Attorney for Plaintiff, Inmate, James D. West, (DC#651314)**, 1024 E. Silver Springs Boulevard, Ocala, FL 34470; Telephone: (352) 732-8030; Facsimile; (888) 399-3129; SWP@TheFloridaLegalAdvocacyGroup.com; and to Caroline Johnson Levine, Esquire, Office of the Attorney General, General Civil – Tampa, **Attorney for Defendant, Julie L. Jones, Secretary of the Florida Department of Corrections**, 501 E. Kennedy Blvd., Suite 1100, Tampa, FL 33601, Telephone: (813) 577-4571; caroline.johnsonlevine@myfloridalegal.com; deborah.mason@myfloridalegal.com.

CHIMPOULIS & HUNTER P.A.
Attorneys for Defs/ Wexford Defendants
150 South Pine Island Road - Suite 510
Plantation, FL  33324
Phone: (954) 463-0033 / FAX:  (954) 463-9562

/s/ Alexander Dombrowsky
BY:   ALEXANDER DOMBROWSKY, ESQ.
Florida Bar No.:  186260
Email – adombrowsky@chl-law.com
M. KATHERINE HUNTER, ESQUIRE
Florida Bar No.:  981877
Email – khunter@chl-law.com