## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JAMES DARYL WEST,

      Plaintiff,

v.                                                     Case No: 2:16-cv-694-FtM-38NPM

RONALD HEMPHILL,
CARMELLO BERRIOS, KAREN
BLANKENSHIP, HOWARD
WETTERER, BONNIE
LAROSA, ROBERT
GILBREATH, SABRINA
SCHULTZ, DIANN SPRATT,
JULIE JONES, WEXFORD
HEALTH SOURCES, INC.,
KATHY CONNER, KARA
WILLIAMS and JAMES
LICATA,

      Defendants.

_____/

## OPINION AND ORDER[1]

Before the Court are the Wexford Defendants' Omnibus Motion to
Dismiss Fourth Amended Complaint (Doc. 214), Defendant Secretary Mark
Inch's Motion to Dismiss Fourth Amended Complaint (Doc. 215), the
Department Defendants' Omnibus Motion to Dismiss Fourth Amended

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using
hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties
or the services or products they provide, nor does it have any agreements with them.  The
Court is also not responsible for a hyperlink's availability and functionality, and a failed
hyperlink does not affect this Order.

Complaint (Doc. 216), Defendant Robert Gilbreath's Motion to Dismiss Fourth Amended Complaint (Doc. 217), and Plaintiff James Daryl West's responses in opposition (Doc. 218, Doc. 219, Doc. 220, Doc. 221).

## Background

This is a civil rights case filed by James Daryl West, a prisoner of the Florida Department of Corrections (FDOC). The Court recounts the factual background as pled in West's Fourth Amended Complaint, which it must take as true to decide whether the complaint states plausible claims. *See Chandler v. Sec'y Fla. Dep't of Transp., 695 F.3d 1194, 1198-90 (11th Cir. 2012).* West was involved in a bus accident in 1999. Since then, he has experienced pain in his back, knee, and right foot. Specifically, West suffered from the following conditions:

> chronic strained lumbosacral ligament, lower back pain, chronic and intervertebral disc disorder, thoracolumbar, and lumbosacral lumbar disc disorder/hernia, lumbar spondylosis, right-sided sciatica and left sided muscle spasms, injury to the muscle, fascia, and tendon of his lower back, premature degenerative osteoarthritis, and localized secondary osteoarthritis of the right knee.

(Doc. 213 at 5-6).

West was incarcerated at Charlotte Correctional from October 3, 2014, to September 9, 2015. Wexford Health Sources, Inc. provided healthcare to inmates at Charlotte Correctional under contract with FDOC and employed the doctors and nurses who treated West during his incarceration there. While

at Charlotte Correctional, Classification Supervisor James Licata assigned West to work in food service. West's supervisors—including Foodservice Director Robert Gilbreath and managers Sabrina Schultz and Diann Spratt— sometimes instructed West to sit on an upside-down garbage can and chop vegetables, which West claims exacerbated his injuries and caused him pain. They declined to provide West a chair despite multiple requests.

Dr. Carmello Berrios, Chief Health Officer at Charlotte Correctional, saw West for treatment of his pain on June 11, 2015. Berrios ordered x-rays of West's knee and diagnosed him with osteoarthritis, degenerative joint disease, and chronic pain in his knee. Berrios issued West ibuprofen, analgesic balm, and a cane, and he gave West "passes for restricted activity, light duty, limited standing, [and] no bending, pushing, or lifting over 15 pounds." (Doc. 213 at 25). On June 13, 2015, West was given "a bed rest lay-in pass, a restricted activity pass, a no work pass, and a no recreation pass" until June 16, 2015. (Doc. 213 at 8). Despite the end date, the pass was to stay in effect until West was x-rayed. On June 17, 2015, FDOC required West to return to work even though no x-ray had been performed.

X-rays were taken of West's knee on June 24, 2015. Berrios marked the x-ray results as "abnormal." (Doc. 213 at 26). On June 25, 2015, Karen Blankenship, an advanced registered nurse practitioner at Charlotte Correctional, saw West to discuss the x-rays and determine a treatment plan.

West requested further testing and evaluation, but Blankenship did not order any. Nor did Blankenship give West a pass to excuse him from his food service assignment.

On June 27, 2015, West complained to food service manager Sabrina Schultz of knee pain. When Schultz told West he still needed to work his scheduled shift, West declared a medical emergency. He was then seen by Bonnie LaRosa, registered nurse at Charlotte Correctional. West rated his knee pain at 10/10 and requested further diagnostic testing, orthopedic appliances, and pain medication. LaRosa offered ibuprofen and analgesic balm.

After leaving sick call, West went back to work his food service assignment. Schultz instructed him to lift a 75-pound bag of vegetables. West was injured when he attempted to comply.[2] The Fourth Amended Complaint alleges two accounts of the injury. At paragraph 34, West claims that when he "attempted to lift the bag, he slipped and was then struck by the bag." While at paragraph 315, West claims that when he "reached to pick up the bag, it toppled down and crashed down on [him], causing [him] to fall." West could not get up, and two inmates lifted him into a wheelchair. Schultz did not write an incident report.

---

[2] Defendants question whether this incident occurred. For the purposes of deciding the motions to dismiss, the Court presumes that it did.

On June 29, 2015, West sought treatment for injuries resulting from his June 27 fall, but Blankenship and LaRosa denied care.  Blankenship accused West of lying about the incident, and LaRosa told him that nothing had changed.

On August 13, 2015, LaRosa and Dr. Howard Wetterer, Chief Health Officer at Charlotte Correctional,[3] saw West for pain and numbness in his back, swelling and pain in his right knee and foot, and difficulty walking.  Wetterer examined West's right leg and found it to be smaller and weaker than the left. West requested more testing and medication, but Wetterer declined.  LaRosa examined West's leg and found that his bandage was too tight.

On October 14, 2015, Dr. Ronald Hemphill, Chief Health Officer at Charlotte Correctional, saw West for his ongoing pain.  He examined West, gave him painkillers, and ordered x-rays of his knee and foot.  Hemphill received the x-rays on October 29, 2015.  They indicated West suffered from narrowing and osteophytosis of the medial compartment and patellofemoral joint and degenerative joint disease.  Hemphill saw West again on November 21, 2015, for West's back, knee, and foot pain.  West requested further testing and a consult with a specialist, but Hemphill declined.

---

[3] West attributes the same "Chief Health Officer" title to Berrios, Wetterer, and Ronald Hemphill without explanation.

West filed a *pro se* complaint on September 8, 2016.  (Doc. 1).  After an appearance by counsel on West's behalf and a couple amendments, the Court dismissed the Second Amended Complaint (Doc. 168) because it was a shotgun pleading.  (Doc. 194).  West filed his Third Amended Complaint (Doc. 195), then moved to amend so he could correct one claim and remove another.  The Fourth Amended Complaint followed.  It alleges 16 claims of deliberate indifference to his medical needs and conditions of confinement.  Defendants move to dismiss the claims for failure to state a claim, failure to exhaust administrative remedy, and qualified immunity.

## Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation.  The Supreme Court has been clear on this point – a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct.  *See Iqbal*, 556 U.S. at 678.  This plausibility standard requires "more than a sheer possibility that a defendant

has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).  And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

West files his Fourth Amended Complaint under 42 U.S.C. § 1983.  To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)).  In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act, before a prisoner may bring a § 1983 claim, he must exhaust available administrative remedies. 42 U.S.C. § 1997e.  The purpose of administrative exhaustion "is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (cleaned up).  The PLRA requires "proper exhaustion,"

which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Eleventh Circuit has established a two-step process for deciding a motion to dismiss for failure to exhaust administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed…If the complaint is not subject to dismissal at the first step, where plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008).

The Florida legislature delegated to FDOC the establishment of administrative remedies for aggrieved inmates. *Chandler*, 379 F.3d at 1287. FDOC created a three-step grievance process. To exhaust it, a prisoner must (1) file an informal grievance to the responsible staff member, (2) file a formal grievance with the warden's office; and (3) appeal the formal grievance to the Secretary of the FDOC. *Id.* at 1288.

West attached to his Fourth Amended Complaint a printout of his appeal records during his incarceration.   (Doc. 213-1).   The records log dozens of grievance appeals beginning in 2010.   West also attached 5 informal grievances, 13 formal grievances, 15 secretary-level appeals, and FDOC's responses.   (Doc. 213-1).   Defendants challenge the grievances for not addressing the subject matter of this case and not identifying all Defendants. They also point out that some grievances and appeals were returned without action due to procedural defects.

After carefully reviewing the grievances, the Court finds that West exhausted his administrative remedies as to his medical care, being required to sit on an upside-down garbage can, and being ordered to carry a 75-pound bag of vegetables.   While the grievances sometimes stray from the issues complained of here, they provided FDOC fair notice that West considered his medical treatment and working conditions unconstitutional.   That remains true even if the Court disregards the grievances and appeals that were returned without action due to procedural defects.   For example, Grievance No. 15-6-32735 complained of constant knee pain and requested additional medical treatment.   Grievance Nos. 15-6-30011, 15-6-30017 and 15-6-29606 complained that West's working conditions caused him pain and violated his medical passes.   And Grievance No. 15-6-29582 centers on West's July 27 injury while working in food service.   West appealed all five of these grievances to the

secretary level.  Finally, West need not have identified all Defendants in his grievances.  PLRA does not impose a "name all defendants" requirement. *Jonse v. Bock*, 549 U.S. 199, 217 (2007).

Given the purpose of administrative exhaustion—"to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues"—the Court finds that West satisfied the PLRA's pre-suit conditions.  *Chandler*, 379 F.3d at 1287. There is one exception.  In his claims against Gilbreath and Schultz, West vaguely alleges he was required to return to work after being given a bed-rest pass.  West does not identify *who* made him return to work, so it is unclear whether his claims against Gilbreath and Schultz are based on that allegation. Regardless, he did not mention this claim in his grievances.  So to the extent West claims liability based on his return to work in violation of a bed-rest pass, that claim was not exhausted.

**B. Pleading Sufficiency**

West accuses Defendants of violating his rights under the Eighth Amendment to be free from cruel and unusual punishment.  Specifically, he alleges deliberate indifference to his serious medical needs and conditions of confinement.

Only officials who personally participate in constitutional violations may be liable under § 1983.  *Coleman v. Bowden*, 797 F. App'x 422, 427 (11th Cir.

2019).  Three Defendants did not personally participate in any of West's alleged constitutional violations and can thus be dismissed at the outset.  Julie Jones— whom West sued in her individual capacity—is the former Secretary of the FDOC.[4]  West does not allege any facts suggesting that Jones had knowledge of his medical treatment or working conditions, or that she directed his treatment in any way.  Kathy Conner and Kara Williams were FDOC employees whose sole participation in the alleged facts was reviewing and responding to West's grievances and appeals.  Denying grievances, without more, does not support liability under § 1983.  *Id.*; *see also Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.").  Thus, the claims against Jones, Conner, and Williams—Counts 1, 2, and 9-12—are dismissed.

1.   Deliberate Indifference to Serious Medical Need

"To prevail on a claim of deliberate indifference to serious medical need in violation of the [Eighth] Amendment, a plaintiff must show: '(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Youmans v.*

---

[4] Current secretary Mark Inch was not substituted for Jones under Federal Rule of Civil Procedure 25(d) because Rule 25(d) only applies to a party sued in his or her official capacity.

*Gagnon*, 626 F.3d 557, 563 (11th Cir.2010) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)).

In the Eleventh Circuit, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Shaw v. Allen*, 701 F. App'x 891, 893 (11th Cir. 2017) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). West alleges his medical conditions— listed above—constitute a serious medical need because they were painful. (Doc. 212 at 6, ¶ 30; Doc. 220 at 3). "Severe pain that is not promptly or adequately treated can…constitute a serious medical need depending on the circumstances." *Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016). Interpreting West's allegations in a light most favorable to him, the Court finds he plausibly alleged a serious medical need.

Next, West must plausibly allege that each Defendant was deliberately indifferent to his serious medical need. Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (internal quotation marks omitted). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of

treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Id.*

Mere medical malpractice or "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment does not support a claim of deliberate indifference." *Melton*, 841 F.3d at 1224. Nor does the exercise of medical judgment by a care provider. *Hernandez v. Sec'y Fla. Dep't of Corr.*, 611 F. App'x 582, 584 (11th Cir. 2015). "When a prisoner has received medical attention, courts are reluctant to second-guess medical judgments even if there is a dispute over the adequacy of treatment." *Brennan v. Headley*, 807 F. App'x 927, 935 (11th Cir. 2020). "Rather, medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (cleaned up).

In evaluating claims of deliberate indifference, courts must judge each defendant separately and based on what that person knew. *Melton*, 841 F.3d at 1224.

### a. Dr. Carmello Berrios (Count 4)

Berrios has not appeared in this case and thus has not moved to dismiss Count 4. But since West is proceeding *in forma pauperis*, the Court will review whether Count 4 states a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court

determines that…(B) the action…(ii) fails to state a claim on which relief may be granted").

On June 11, 2015, Berrios examined West and diagnosed him with osteoarthritis, degenerative joint disease, and chronic knee pain. Berrios gave West ibuprofen, analgesic balm, and a cane, ordered x-rays of his knee, and gave him passes to limit his activity. When West told Berrios that Gilbreath was not honoring the restricted activity passes, Berrios said, "I have written all the passes authorized by the FDOC." (Doc. 213 at 25). On June 24, 2015, Berrios told West that further treatment was "out of the question." (Doc. 213 at 26).

Berrios did not deny West medical treatment. And contrary to West's conclusory allegation, Berrios's medical care was not so cursory as to amount to no care at all. Rather, West's allegations demonstrate that Berrios exercised his medical judgment and instituted a treatment plan. West wanted more extensive treatment, but a difference in medical opinion does not give rise to a claim for deliberate indifference. "[A]s *Estelle* teaches, the question of whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). The Court is guided by *Estelle* here

and in deciding the remaining medical deliberate indifference claims.  Count 4 is dismissed.

### b. Karen Blankenship (Count 5)

West's claim against Blankenship stems from two days in June 2015.  On June 25, Blankenship saw West to discuss his recent x-ray and determine a treatment plan.  During the visit, West requested further testing and evaluation, but Blankenship did not order any.  That shows a difference in medical opinion, not deliberate indifference.

On June 29, 2015, Blankenship declined to examine or treat West when he sought care for his June 27 fall because she thought West was lying about the accident.  West explained in a grievance attached to the Fourth Amended Complaint that Blankenship "really believed that [he] was lying about being hurt in foodservice because there was no documentation in [his] medical jacket."  (Doc. 213-1 at 32).  Thus, Blankenship did not have subjective knowledge of a serious medical need on June 29.  While Blankenship's disbelief might support a claim of negligence or medical malpractice, it is not deliberate indifference.  Count 5 is dismissed.

### c. Dr. Howard Wetterer (Count 6)

Wetterer examined West's knee on August 13, 2015.  West wanted more diagnostic testing and medication, but Wetterer declined.  West filed a grievance requesting an MRI.  In response, Wetterer affirmed his assessment,

noting that previous x-rays showed mild arthritis.  (Doc. 213-1 at 40).  These allegations demonstrate that Wetterer exercised his medical judgment and formed an opinion that was different than West's.  That does not amount to deliberate indifference.  Count 6 is dismissed.

### d.  Bonnie LaRosa (Count 7)

LaRosa saw West twice in 2015.  On June 27, 2015, West rated his knee pain at a 10/10.  LaRosa offered ibuprofen and an analgesic balm but rejected West's request for further diagnostic testing, orthopedic appliances, and pain medication.   Then on August 13, 2015, West saw LaRosa with difficulty walking and a swollen knee.  LaRosa examined West and determined the bandage was too tight.  LaRosa's exercise of medical judgment, even if West disagreed with it, did not demonstrate deliberate indifference.  Count 7 is dismissed.

### e.  Dr. Ronald Hemphill (Count 8)

Hemphill saw West twice in 2015.   On October 14, 2015, Hemphill examined West, ordered x-rays of his knee and foot (but not his back), and gave West painkillers.  Hemphill saw West again on November 21, 2015.  West's only allegation from that visit is that Hemphill denied West's request to see a specialist and receive more examination and testing.  Hemphill's refusal to offer West's preferred course of treatment was not deliberate indifference. Count 8 is dismissed.

### f. *Wexford Health Sources, Inc. (Count 3)*

Wexford is a private company that provided healthcare to inmates at Charlotte Correctional under contract with FDOC.  As such, Wexford "is treated as a municipality for purposes of § 1983 claims." *Brennan v. Headley,* 807 F. App'x 927, 937 (11th Cir. 2020).  Wexford can only be liable if "the alleged constitutional harm is the result of a custom or policy." *Id.*  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality, and a custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* (cleaned up).

West alleges he did not receive his desired medical treatment from Berrios, Blankenship, LaRosa, and Wetterer because Wexford and FDOC would not authorize it.  He claims that Berrios and Blankenship told him Wexford and FDOC restricted non-emergency care.  Wexford argues West has not met his burden of proof that an offending policy or custom exists.  But that argument is premature.  At this stage, West merely needs to allege facts that make the existence of such a policy or custom plausible.  West has done so.

Having found that West adequately alleged a policy or custom, the Court must decide whether the policy or custom plausibly caused a constitutional deprivation.  West oversteps a bit by alleging that "WEXFORD's blanket denial of WEST's medically necessary evaluation" left his injuries "untreated."  (Doc.

213 at 23).  That does not comport with West's more specific allegations. Wexford employees evaluated West multiple times and provided West ongoing treatment.  However, West has plausibly alleged that a policy of restricting non-emergency medical treatment tied the hands of Wexford employees, prevented West from receiving more intensive treatment, and left him in severe pain.  The Court finds West's allegations sufficient to state a claim against Wexford for deliberate indifference.

The Court's ruling on this point is not inconsistent with dismissal of the claims against the individual Wexford employees.  *Monell* liability can exist even if no employee is individually liable. *Barnett v. MacArthur* 956 F.3d 1291, 1301 (11th Cir. 2020).  "Situations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but were no one individual's actions are sufficient to establish personal liability for the violation." *Id.* (quoting *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002)).  The Court dismisses West's claims against the individual employees because West did not plausibly allege that they had the requisite state of mind.  That pleading failure does not undermine West's claim against Wexford.

2.  <u>Deliberate Indifference to Conditions of Confinement</u>

The requirements of an Eighth Amendment claim based on deliberate indifference to conditions of confinement are similar to those for medical indifference. A plaintiff must satisfy objective and subjective criteria:

> Under the objective component, the plaintiff must demonstrate "a substantial risk of serious harm." [*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)]…Under the subjective component, the plaintiff must prove "the defendants' deliberate indifference" to that risk of harm by making three sub-showings: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." [*Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)].

*Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020).

West's conditions-of-confinement claims are based on allegations that prison officials ignored his medical passes. Berrios diagnosed West with osteoarthritis, degenerative joint disease, and chronic knee pain and implemented a treatment plan that included limitations on certain physical activities. The Court finds it plausible that an official's disregard of West's prescribed limitations could create a substantial risk of serious harm. *See Shaw, supra* ("A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'").

### a. James Licata (Count 13)

West sued Licata for assigning him to work in food service and denying two grievances. West does not allege that Licata knew of West's medical

conditions and limitations when he assigned West to food service.  On June 30, 2015, West filed a grievance requesting a different work assignment.  Licata denied the grievance because West was already scheduled to see the Institutional Classification Team about a job change.  On July 15, 2015, West filed a grievance against Spratt for making him sit on an upside-down garbage can and chop vegetables.  Licata denied the grievance because it accused Spratt of retaliating against him but did not identify any action that could be considered retaliation.   (Doc. 213-1 at 55).   These allegations do suggest deliberate indifference.  Count 13 is dismissed.

### b. Robert Gilbreath (Count 14)

West sues Gilbreath for ignoring West's medical passes and requiring West to sit on an upside-down garbage can and chop vegetables.  West claims Gilbreath told him, "If you don't have a bed rest, lay-in pass, you will work or go to confinement for refusing to work" and "I don't care about your passes or cane." (Doc. 213 at 52).  But West does not allege that Gilbreath actually made him work while a bed rest pass was in effect.  And even if he did, West did not exhaust his administrative remedies for such a claim.  What is more, sitting on an upside-down garbage can did not violate the limitations enumerated in West's medical passes: "Light duty, restricted activity, no standing over 15 minutes, no bending, pulling, or pushing, no lifting over 15 pounds, and the use of a cane." (Doc. 213 at 53).  Because West does not allege that Gilbreath

made him do anything in violation of his medical passes, Count 14 fails to state a claim.

### c. Sabrina Schultz (Count 15)

Like Berrios, Schultz has not appeared in this case and thus has not moved to dismiss Count 15. But the Court will review whether Count 15 states a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2), *supra.*

West's claim against Schultz stems from June 27, 2015, when Schultz told him to sit on a garbage can and chop vegetables, then told him to carry a 75-pound bag of vegetables. West reminded Schultz that he was cane-dependent and was not supposed to lift more than 15 pounds, but to no avail. Schultz threatened West with confinement if he refused. When West attempted to lift the bag, he fell and exacerbated his preexisting injuries. The Court finds these allegations sufficient to state a claim for deliberate indifference.

### d. Diann Spratt (Count 16)

West alleges that Spratt regularly required him to sit on a garbage can instead of a chair and carry 75-pound bags of vegetables, and that Spratt threatened to place West in confinement if he refused. West also alleges that Spratt knew he was cane-dependent and limited to lifting no more than 15 pounds. Ordering West to exceed his prescribed limitations created a

substantial risk of serious harm.  West has stated a claim for deliberate indifference against Spratt.

### C. Qualified Immunity

The FDOC Defendants raise the defense of qualified immunity, which protects government officials from civil liability.  *Howard v. Memnon*, 572 F. App'x 692, 696 (11th Cir. 2014).  "To claim qualified immunity, a defendant must first show he was performing a discretionary function." *Id.*  "The burden then shifts to the plaintiff to show that: (1) the defendant violated a constitutional right; and (2) the right was clearly established at the time of the violation." *Id.*  A right is "clearly established" if a reasonable person would have known about it.

The allegations in the Fourth Amended Complaint establish that Schultz and Spratt were acting within their discretionary authority when they directed West's work in his food service assignment at Charlotte Correctional.  The burden thus shifts to West to show violation of a clearly established constitutional right.  The Court found above that Schultz and Spratt violated the Eighth Amendment by ordering him to carry 75-pound bags of vegetables against doctor's orders.  The Court also finds that ordering West to greatly exceed the lifting limitations prescribed by Dr. Berrios was so obviously wrong that any reasonable official would have known it violated the Constitution. Thus, Schultz and Spratt are not shielded by qualified immunity—at least not

at this stage of the case.  After further development of the facts, this issue can be addressed at the summary judgment stage.

Accordingly, it is now

**ORDERED:**

1. The Wexford Defendants' Omnibus Motion to Dismiss Fourth Amended Complaint (Doc. 214) is **GRANTED in part and DENIED in part**.

2. Defendant Secretary Mark Inch's Motion to Dismiss Fourth Amended Complaint (Doc. 215) is **GRANTED**.

3. The Department Defendants' Omnibus Motion to Dismiss Fourth Amended Complaint (Doc. 216) **GRANTED in part and DENIED in part**.

4. Defendant Robert Gilbreath's Motion to Dismiss Fourth Amended Complaint (Doc. 217) is **GRANTED**.

5. Counts 1, 2, and 4-14 are **DISMISSED**.

6. The Clerk is **DIRECTED** to terminate all Defendants except Wexford Health Sources, Inc., Sabrina Schultz, and Diann Spratt.

7. Wexford and Spratt must answer the Fourth Amended Complaint on or before **February 11, 2021**.  The Court will address service of process on Schultz in a separate order.

**DONE** and **ORDERED** in Fort Myers, Florida on January 28, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record